NEW YORK CENT. R. CO. v. LLOYD.

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

No. 191.

APPEAL AND ERROR ⊕⟶1066—QUESTIONS FOR JURY—SUBMISSION OF ISSUE UNSUPPORTED BY EVIDENCE.

In action for death of passenger, killed when train started suddenly while he was alighting at a dark station, submission to jury of question of defendant's negligence in failing to provide sufficient train crew with other issues *held* prejudicial error, where there was no evidence of such insufficiency and a general verdict for plaintiff was returned.

In Error to the District Court of the United States for the Southern District of New York.

Action by Mary P. Lloyd, as administratrix of Victor C. Lloyd, against the New York Central Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

Alexander S. Lyman, of New York City (William Mann, of New York City, of counsel), for plaintiff in error.

Gormly J. Sproull and Hugh M. Harmer, both of New York City, for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On December 6, 1917, the deceased, Victor C. Lloyd, was a passenger on plaintiff in error's train, and intended to alight at its station at Little Ferry, N. J. The plaintiff in error leases the West Shore Railroad Company and maintains this station. When the train approached the station, the deceased got up, waited inside the car until it came to a stop, and then went out on the platform. When the deceased reached the platform, there were other people attempting to alight therefrom. He proceeded to the lower step while the car was at a standstill, and when about to step on the station platform, holding the rail of the car with his right hand and a bundle with his left, the car started forward, causing him to be swung around and fall to the platform, and roll between the platform and the wheels of the train.

The witness who described the movement of the car said it started with a jerk and that he was thus swung. The train, after proceeding a short distance, stopped. Some 20 or 25 passengers alighted from the train. At the place where the deceased attempted to alight, the platform was dark and the station was not lighted. There was no brakeman on the platform of the car from which the deceased alighted, nor was there upon the station platform at the place of the accident. The crew consisted of two trainmen, a baggageman, and the conductor, and the conductor says it was a full crew. There were six cars on the train, all of which carried passengers. Each car was approximately 55 feet in length. The conductor says the car was started forward, at the time of the accident to the deceased, in response to his signal, which he in turn received from a brakeman in the rear.

The evidence presented a question of fact as to whether or not those in charge of the train were negligent in failing to give the deceased a reasonable opportunity to alight from the car before starting it forward in response to the signal given by the conductor.

The District Judge submitted four questions of fact to the jury, upon which there might be predicated negligence on the part of the employés in charge of the train. The first was the failure of the plaintiff in error, in its duty to the deceased, in not stopping a sufficient length of time at the station at Little Ferry to permit passengers to alight; second, to predicate negligence upon the failure to sufficiently light the platform where the passengers, including the deceased, were attempting to alight from the cars; third, to predicate negligence in starting the train in an improper and negligent manner, by a jerk and sudden start, causing the deceased to be thrown from the platform of the car, down between the station platform and the trucks or steps of the passing train, with which he came in collision and caused his death; and, fourth, that there was not a sufficient crew—"that the crew was inadequate for that train, carrying that number

of people, and there should have been provided by the defendant company more brakemen or flagmen stationed along on the train, so as to advise passengers, and see that passengers had time and opportunity for alighting before starting the train."

The verdict of the jury was a general one, and it is therefore not known whether the jury found the plaintiff in error negligent in respect of all the claims of negligence submitted to them, or any one or several of them. There was no evidence adduced in behalf of the defendant in error, indicating that it was the custom or practice upon railroads of like character, engaged in passenger service, to provide more than a conductor, baggageman, and two trainmen for six-car trains. On the other hand, the evidence of the plaintiff in error indicated that this was a full crew, and that a crew of this kind was customarily used in such service. The court charged the jury:

"Again as to the lack of sufficient care: Railroad companies have not got to hire a man for each platform. I don't think any of them do that, and you would measure the requirements of this railroad company according to what other railroad companies do. According to the standard adopted by companies that use reasonable care for the safety of their passengers. This company would be only required to carry such a number of train crew as ordinarily would be safe in watching at one end of the train to another, and giving the signals that passengers were all on or all off, and that it was safe to start. So, if they had such a number, that would be sufficient; but if you find that there was an inadequate and insufficient number to safely look after the boarding or alighting of passengers, then the defendant might be responsible in that respect for this man's death."

To this counsel for the railroad company excepted in the following language:

"I would like to take an exception to your honor's ruling with respect to the number of employés on the train and submitting to the jury the question of whether or not the defendant was negligent in not having more employés on that train.

"The Court: I think it is a question of fact, in view of all the testimony, of what was the proper number of the crew.

"Counsel: It seems to me that there is no testimony to the contrary that there was a full crew on that train. I don't recall any.

"The Court: But there is testimony as to where these men were, and whether they could have seen and properly safeguarded passengers in alighting, and whether the defendant was required, or not, to carry more crew for the train under the circumstances of this particular road, of carrying such a number of passengers and dropping them in such quantities in different places, and whether or not there would be imposed on the railroad company the duty of carrying a crew of several people, so as to safeguard the passenger trains at such stations as this one.

"Counsel: I take an exception."

The difficulty with the position of the defendant in error is that there was no evidence indicating negligence in the failure to provide a larger number as a crew of the train. There was no showing of the custom or practice to be other than that which prevailed on the night in question in the handling of this train. In the absence of some such evidence, we think it was error to permit the jury to exercise their own unaided judgment as to whether or not the crew was sufficient. D.,

L. & W. Co. v. Donahue, 238 Fed. 770, 151 C. C. A. 620; N. Y. Central Co. v. Banker, 224 Fed. 351, 140 C. C. A. 37.

We think this error involved a substantial right of the plaintiff in error and requires a reversal of the judgment appealed from.

Judgment reversed.